# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL PARSHALL, On Behalf of Himself and All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | Case No. _____ |
| v. ) ) | JURY TRIAL DEMANDED |
| ENTEGRA FINANCIAL CORP., ROGER D. PLEMENS, RONALD D. BEALE, LOUIS E. BUCK JR., ADAM W. BURRELL, R. MATTHEW DUNBAR, CHARLES M. EDWARDS, CRAIG A. FOLWER, JAMES M. GARNER, FRED H. JONES, BEVERLY W. MASON, DOUGLAS W. KROSKE, FIRST CITIZENS BANCSHARES, INC., FIRST-CITIZENS BANK & TRUST COMPANY, and FC MERGER SUBSIDIARY VII, INC., ) ) ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on April 24, 2019 (the "Proposed Transaction"), pursuant to which of Entegra Financial Corp. ("Entegra" or the "Company") will be acquired by First Citizens BancShares, Inc. ("BancShares"), a Delaware corporation, and its affiliates First-Citizens Bank & Trust Company ("FC Bank") and FC Merger Subsidiary VII, Inc. ("Merger Sub," and together with BancShares and FC Bank, "First Citizens").

2. On April 23, 2019, Entegra's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with First Citizens. Pursuant to the terms of the Merger Agreement, shareholders of Entegra will receive $30.18 in cash for each share of Entegra they own.

3. On May 24, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Entegra common stock.

9. Defendant Entegra is a North Carolina corporation and a party to the Merger Agreement. Entegra's common stock is traded on the NASDAQ Global Market under the ticker symbol "ENFC."

10. Defendant Roger D. Plemens is President, Chief Executive Officer, and a director of the Company.

11. Defendant Ronald D. Beale is Vice Chairman of the Board of the Company.

12. Defendant Louis E. Buck, Jr. is a director of the Company.

13. Defendant Adam W. Burrell is a director of the Company.

14. Defendant R. Matthew Dunbar is a director of the Company.

15. Defendant Charles M. Edwards is a director of the Company.

16. Defendant Craig A. Fowler is a director of the Company.

17. Defendant James M. Garner is a director of the Company.

18. Defendant Fred H. Jones is Chairman of the Board of the Company.

19. Defendant Beverly W. Mason is a director of the Company.

20. Defendant Douglas W. Kroske is a director of the Company.

21. The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

22. Defendant BancShares is a Delaware corporation and a party to the Merger Agreement.

23. Defendant FC Bank is a North Carolina state bank, a wholly-owned subsidiary of BancShares, and a party to the Merger Agreement.

24. Defendant Merger Sub is a North Carolina corporation, a wholly-owned subsidiary of FC Bank, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Entegra (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

26. This action is properly maintainable as a class action.

27. The Class is so numerous that joinder of all members is impracticable. As of April 23, 2019, there were approximately 6,919,212 shares of Entegra common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

28. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

29. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the

interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

31.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

32.     Entegra is the holding company of Entegra Bank.

33.     Founded in 1922, Entegra Bank operates a total of eighteen branches located throughout the Western North Carolina counties of Cherokee, Haywood, Henderson, Jackson, Macon, Polk, and Transylvania; the Upstate South Carolina counties of Anderson, Greenville, and Spartanburg; and the North Georgia counties of Pickens and Hall.

34.     Entegra Bank also operates loan production offices in Asheville, North Carolina and Clemson, South Carolina.

35.     On April 23, 2019, the Company's Board caused the Company to enter into the Merger Agreement with First Citizens.

36.     According to the press release announcing the Proposed Transaction:

> First-Citizens Bank & Trust Company (First Citizens Bank) and Entegra Financial Corp. (Entegra) announced today the signing of a definitive merger agreement. Entegra provides deposit and loan services through its subsidiary, Entegra Bank.
>
> The agreement provides for the acquisition of Franklin, N.C.-based Entegra Financial Corp. by First Citizens Bank, which is headquartered in Raleigh, N.C. The announcement was made jointly by Frank B. Holding Jr., chairman and chief executive officer of First Citizens Bank, and Roger Plemens, president and chief executive officer of Entegra.
>
> The agreement has been approved by the boards of directors of both companies. The transaction is anticipated to close during the second half of 2019, subject to the

receipt of regulatory approvals, the approval of Entegra's shareholders, and the satisfaction of other customary closing conditions. Under the terms of the agreement, (1) cash consideration of $30.18 per share will be paid to the shareholders of Entegra for each share of its common stock and for each restricted stock unit after conversion to common stock, (2) each Entegra option will be canceled and each option holder will receive a cash payment and (3) no consideration will be paid to First Citizens Bank or its affiliates as a result of their ownership of shares of Entegra's common stock. As of today, First Citizens Bank and/or its affiliates own approximately 1.56% of Entegra's outstanding common stock. The total transaction value, including termination fee, is anticipated to be approximately $219.8 million. . . .

Sandler O'Neill + Partners, L.P. acted as financial advisor to Entegra in connection with this transaction. Raleigh-based Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP represented First Citizens in the transaction; Hunton Andrews Kurth LLP represented Entegra.

37. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 7.1(b) of the Merger Agreement provides:

> From the date of this Agreement until the earlier of the Effective Time and the termination of this Agreement in accordance with its terms, the Company shall not, and the Company shall direct and cause its Subsidiaries and its and its Subsidiaries' Affiliates, directors, officers, employees, agents, and representatives (including any investment banker, financial advisor, attorney, accountant, or other representative retained by such Party or any of its Subsidiaries) not to, directly or indirectly through another Person, (i) solicit, initiate, or knowingly encourage (including by way of furnishing information or assistance), or take any other action to knowingly facilitate or that could reasonably be expected to result in any inquiries or discussions regarding, or the making of any proposal or offer that constitutes or could reasonably be expected to lead to, an Acquisition Proposal; (ii) provide any non-public information or data regarding the Company or any of its Subsidiaries to any Person other than the BancShares Parties and their Subsidiaries relating to or in connection with any Acquisition Proposal or any inquiry or indication of interest that could reasonably be expected to lead to an Acquisition Proposal; (iii) participate in any discussions or negotiations or otherwise communicate in any way with any Person other than the BancShares Parties and their Subsidiaries regarding any Acquisition Proposal; (iv) approve, endorse, or recommend, or execute, enter into, or consummate, any indication of interest, letter of intent, or other Contract (other than a confidentiality or nondisclosure agreement contemplated below in Section 7.1(c)) relating to any Acquisition Proposal or

6

requiring the Company to abandon, terminate, or fail to consummate the transactions contemplated by this Agreement, or propose to do any of the foregoing; or (v) make or authorize any statement, recommendation, or solicitation in support of any Acquisition Proposal.

38. Additionally, the Company must promptly advise First Citizens of any proposals or inquiries received from other parties. Section 7.1(d) of the Merger Agreement states:

> In addition to the obligations of the Company set forth above, the Company shall promptly (within not more than 24 hours) advise BancShares orally and in writing of its or any of its Subsidiaries' receipt of any Acquisition Proposal, or any request for information or inquiry which could reasonably be expected to lead to an Acquisition Proposal, and shall keep BancShares informed, on a current basis, of the continuing status thereof, including the material terms and conditions thereof and any changes thereto, and shall provide to BancShares copies of any written materials received by the Company or any of its Subsidiaries in connection therewith. Additionally, the Company shall contemporaneously provide or make available to BancShares all materials provided or made available to any third party pursuant to this Section 7.1 which have not been previously provided or made available to BancShares.

39. Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants First Citizens a "matching right" with respect to any "Superior Proposal" made to the Company. Section 7.7(b) of the Merger Agreement states:

> (b) Notwithstanding Section 7.7(a), the Company's board of directors may make a Company Change of Recommendation if, but only if:
>
> (i) The Company has complied in all material respects with Section 7.1;
>
> (ii) The Company's board of directors determines in good faith (after consultation with and based on the advice of outside legal counsel) that its failure to make a Company Change of Recommendation would be inconsistent with its fiduciary duties under applicable Law; and
>
> (iii) In the event the Company Change of Recommendation stems from or is a result of, or relates in any manner to, an Acquisition Proposal, (A) the Company's board of directors has determined in good faith that such Acquisition Proposal constitutes a Superior Proposal; (B) the Company notifies BancShares at least five Business Days prior to making the Company Change of Recommendation of its intention to make such Company Change of Recommendation in response to such Superior

Proposal, and furnishes to BancShares the identity of the Person making such Superior Proposal, a copy of the proposed transaction agreement(s) and all other documents relating to such Superior Proposal, and a reasonable description of the events or circumstances giving rise to its determination to take such action; (C) prior to effecting the Company Change of Recommendation, the Company negotiates, and causes its financial, legal, and other advisors to negotiate, in good faith with BancShares, during the five Business Day period following the Company's delivery of the notice referred to in clause (B) above (to the extent BancShares desires to so negotiate), to make such adjustments to the terms and conditions of this Agreement so that such Acquisition Proposal ceases to constitute a Superior Proposal; and (D) after the conclusion of such five Business Day period, the Company's board of directors determines in good faith, after giving effect to all of the adjustments (if any) which may be offered by BancShares pursuant to clause (C) above, that such Acquisition Proposal continues to constitute a Superior Proposal (it being agreed that in the event that, following the Company's delivery of the notice referred to in clause (B) above, there is any material revision to the terms of a Superior Proposal, including, any revision in price, the five Business Day period during which the Parties agree to negotiate in good faith shall be extended, if applicable, to ensure that at least three Business Days remain to negotiate subsequent to the time the Company notifies BancShares of any such material revision (it being understood that there may be multiple extensions)).

40. The Merger Agreement also provides for a "termination fee" of up to $8 million payable by the Company to First Citizens.

***The Materially Incomplete Proxy Statement***

41. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

42. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

43. First, the Proxy Statement omits material information regarding the Company's financial projections.

44. The Proxy Statement fails to disclose the "earnings per share estimates for Entegra for the years ending December 31, 2019 and December 31, 2020, as well as [the] estimated annual earnings growth rate for the years thereafter and estimated dividends per share for the years ending

December 31, 2019 through December 31, 2023."

45. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

46. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Sandler O'Neill + Partners, L.P. ("Sandler").

47. With respect to Sandler's Comparable Company Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Sandler in the analysis.

48. With respect to Sandler's Analysis of Precedent Transactions, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Sandler in the analysis.

49. With respect to Sandler's Net Present Value Analyses, the Proxy Statement fails to disclose: (i) the earnings per share estimates for Entegra for the years ending December 31, 2019 and December 31, 2020; (ii) the annual earnings growth rate for the years thereafter; (iii) estimated dividends per share for the years ending December 31, 2019 through December 31, 2023; (iv) the terminal values of the Company; (v) Sandler's basis for applying price to 2023 earnings multiples ranging from 11.0x to 20.0x and multiples of December 31, 2023 tangible book value ranging from 110% to 185%; and (vi) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 15.0%.

50. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

51. Third, the Proxy Statement omits material information regarding potential conflicts of interest of Sandler.

52. The Proxy Statement fails to disclose the amount of Sandler's fee that is contingent upon consummation of the Proposed Transaction.

53. The Proxy Statement fails to disclose the amount of compensation Sandler received for "act[ing] as financial advisor to Entegra in connection with the SmartFinancial transaction as well as Entegra's acquisition of Chattahoochee Bank of Georgia."

54. The Proxy Statement fails to disclose the amount of compensation Sandler received for "act[ing] as financial advisor to Entegra in connection with Entegra's acquisition of certain branch offices of Sterns Financial Services, Inc."

55. The Proxy Statement fails to disclose whether Sandler performed any additional services for Entegra or its affiliates in the two years preceding the date of its opinion.

56. The Proxy Statement fails to disclose the amount of compensation Sandler received for "act[ing] as financial advisor to First Citizens in connection with First Citizens' repurchase of a certain amount of its outstanding shares."

57. The Proxy Statement fails to disclose whether Sandler performed any additional services for BancShares or its affiliates in the two years preceding the date of its opinion.

58. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

59. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Entegra's Reasons for the Merger; Recommendation of the Entegra Board of Directors; and (iii) Opinion of Entegra's Financial Advisor.

60. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Entegra**

61. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Entegra is liable as the issuer of these statements.

63. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

64. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

65. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy

Statement and in other information reasonably available to stockholders.

66. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

67. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

68. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and First Citizens

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. The Individual Defendants and First Citizens acted as controlling persons of Entegra within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Entegra and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

71. Each of the Individual Defendants and First Citizens was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

73. First Citizens also had supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

74. By virtue of the foregoing, the Individual Defendants and First Citizens violated Section 20(a) of the 1934 Act.

75. As set forth above, the Individual Defendants and First Citizens had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or

necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 20, 2019      **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*